UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AERIANN CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18-CV-01636 JAR |
| ) | |
| GENERAL MOTORS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Remand. (Doc. No. 15). The motion is fully briefed and ready for disposition.

**Background**

On June 26, 2018, Plaintiff filed a petition for damages against Defendants General Motors ("GM") and Jerrail Johnson based on violations of the Missouri Human Rights Act ("MHRA") in the Circuit Court of St. Charles County. (Pet., Doc. No. 7). She filed her First Amended Petition on August 14, 2018. (Am. Pet., Doc. No. 8). Plaintiff alleges that Johnson, her supervisor, offered her more hours in exchange for sex. (Am. Pet. at ¶¶ 5-7). According to Plaintiff, after refusing Johnson's offer, her hours began to drop. (Id. at ¶ 9). She further alleges that Defendants retaliated against her for reporting Johnson's sexual harassment and hostile work environment by terminating her employment. (Id. at ¶¶ 10-12). Plaintiff seeks compensatory damages as well as punitive damages and attorney's fees. The petition does not specify the amount of damages sought.

Defendants removed the case to this Court on September 26, 2018, invoking this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. No. 1). Defendants assert that

1

the Court has diversity jurisdiction because Plaintiff is a resident and citizen of Missouri; GM is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Michigan; and Johnson is a citizen of the State of Illinois. (Doc. No. 1 at ¶¶ 11-13). Finally, Defendants assert that the damages sought by Plaintiff are greater than $75,000. (Id. at ¶¶ 7-10).

On October 17, 2018, Plaintiff filed a motion to remand, arguing that Defendants have failed to meet their burden of proving the amount in controversy and diversity of citizenship, and that in the absence of federal diversity jurisdiction, the case should be remanded to the Circuit Court of St. Charles County.

**Discussion**

Federal courts have original jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332(a). In removal cases, the Court reviews the state court petition and the notice of removal to determine whether it has jurisdiction. Sherrard v. Boeing Co., No. 4:17CV1444 RLW, 2017 WL 2973947, at *1 (E.D. Mo. July 12, 2017). The party invoking jurisdiction bears the burden of demonstrating it exists. Central Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009). Thus, Defendants bear the burden in this case. Factual matters such as the citizenship of the parties and amount in controversy must be established by the preponderance of the evidence. Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009); see also In re Prempro Products Liability Litig., 591 F.3d 613, 620-21 (8th Cir. 2010).

**Citizenship of the parties**

The removal statute, 28 U.S.C. § 1332(a)(1), requires complete diversity of citizenship between plaintiffs and defendants. In re Prempro, 591 F.3d at 620-21. In the case of a removed

action, diversity must exist both when the state petition is filed and when the petition for removal is filed. See Knudson v. Sys. Painters, Inc., 634 F.3d 968, 975-76 (8th Cir. 2011); Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001). "[T]he existence of diversity is determined from the fact of citizenship of the parties named." Voisey v. Adams & Assocs., Inc., No. 4:17 CV 2505 CDP, 2017 WL 5171107, at *2 (E.D. Mo. Nov. 8, 2017). Allegations concerning the parties' residency do not satisfy requirements for federal diversity jurisdiction. Hug v. Am. Traffic Sols., Inc., No. 4:14CV00138 ERW, 2014 WL 1689303, at *4 (E.D. Mo. Apr. 29, 2014) (citing Texaco–Cities Serv. Pipe Line Co. v. Aetna Cas. & Sur. Co., 283 F.2d 144, 145 (8th Cir. 1960)). Instead, there must be allegations of each party's place of citizenship, including allegations of any corporate party's state of incorporation and principal place of business. 28 U.S.C. §§ 1332(a), (c)(1); see Sanders v. Clemco Inds., 823 F.2d 214, 216 (8th Cir. 1987).

In her state court petition, Plaintiff identifies herself as a "resident" of the State of Missouri; GM as a limited liability corporation registered in Missouri and doing business in Missouri; and Johnson as an individual "who upon information and belief resides in Missouri." (Am. Pet. at ¶¶ 1-3) In their joint notice of removal, Defendants identify Plaintiff as a resident and citizen of the State of Missouri; GM as a corporation organized under the laws of the State of Delaware, with its headquarters and principal place of business in the State of Michigan, making it a citizen of the State of Michigan; and Johnson as a citizen of the State of Illinois – "contrary to Plaintiff's assertion in paragraph 3 of the Petition." (Doc. No. 1 at ¶¶ 11-13). In her motion to remand, Plaintiff argues that Defendants have failed to prove Johnson's "residency."

For diversity purposes, a party's citizenship is determined by his physical presence in a state along with his intent to remain there indefinitely. Altimore v. Mount Mercy College, 420

F.3d 763, 768 (8th Cir. 2005) (citation omitted). Factors to consider in determining a party's citizenship include, but are not limited to, where that party resides, votes, banks, possesses a driver's license, seeks medical treatment, pays taxes, and works. Id. at 769. Finally, a party "remains a citizen of [a] state until he legally acquires a new state of citizenship." Id.

Defendants submit a declaration from Johnson stating that he has resided in his home located in Fairview Heights, Illinois since March 2016. (Declaration of Jerrail Johnson ("Johnson Decl."), Doc. No. 22-1, at ¶ 4). He has a bank account in Illinois with Regions Bank in Madison, Illinois, which he opened before June 26, 2018. (Id. at ¶ 7). Johnson has an Illinois driver's license and owns a car and other personal property and assets located in Illinois. (Id. at ¶¶ 9-10). By contrast, Johnson does not own a home or any real property in Missouri. (Id. at ¶ 11). Johnson further states that he considers his true, fixed home to be Illinois, and that he intends to remain domiciled in Illinois indefinitely, that is, for the remainder of his life. (Id. at ¶ 6). Plaintiff offers no evidence in reply suggesting that Johnson is a citizen of Missouri, or any state other than Illinois. The Court therefore finds Defendants have met their burden to establish the diversity of the parties by establishing the citizenship of Johnson in Illinois.

**Amount in controversy**

Plaintiff next argues Defendants have failed to meet their burden of showing the amount in controversy exceeds $75,000. "To meet its burden with regard to the jurisdictional amount, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." Hrastich v. Advance Auto Parts, Inc., No. 4:14CV22 JAR, 2014 WL 3341121, at *1 (E.D. Mo. July 8, 2014) (citations omitted). In making this determination, the removing party need not prove that "the damages *are* greater than the requisite amount," but that "the claims ... could, that is *might*, legally satisfy the amount in controversy requirement." James

Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 833 (8th Cir. 2005) (citations omitted); see also Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 944 (8th Cir. 2012). While this is a relatively permissive standard, the removing party must still provide "some specific facts or evidence demonstrating that the jurisdictional amount has been met." Hill v. Ford Motor Co., 324 F. Supp.2d 1028, 1036 (E.D. Mo. 2004). Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount. Bell, 557 F.3d at 956 (citation omitted).

In support of their contention that the amount in controversy exceeds $75,000, Defendants assert that at the time her employment with GM ended, Plaintiff's base hourly rate was $16.66; her overtime rate was $24.99 per hour; and she received a 5% premium for working second shift. (Declaration of George Herina ("Herina Decl."), Doc. No. 22-2 at ¶ 4). Employees in Plaintiff's position were typically scheduled for 8-hour shifts. (Id. at ¶¶ 3, 5). Defendants note Plaintiff's allegations that she was asked if she would like to work six days per week and that she responded affirmatively. (Am. Pet. at ¶¶ 5-6). This, according to Defendants, would amount to 48 hours and $909.52 per week. Plaintiff's employment ended on July 20, 2017. (Id. at ¶ 12). Thus, Plaintiff's back pay damages to date amount to $60,937.84 using Defendants' calculations. (Doc. No. 22 at 4). Assuming approximately 18 months between removal to this Court and trial[1], Defendants assert that Plaintiff's back pay damages alone could amount to $124,604.24 at the time of judgment. (Id. at 5).

---

[1] This Court has held, "based on authority and common sense," that it is appropriate to factor into an amount-in-controversy calculation the amount of lost wages that will accrue through trial, provided the plaintiff would be entitled to that amount if successful and there is adequate evidence from which to determine the amount. See Felon v. Burch, No. 4:15CV00185 JCH, 2015 WL 928558, *2–4 (E.D. Mo. Mar. 4, 2015).

5

In reply, Plaintiff argues that Defendants' calculations are speculative in that they have not demonstrated that she ever worked overtime, ever worked second shift, or ever worked six days per week. Plaintiff submits her 2017 W-2 and earnings summary (Doc. No. 25-1) to show that during her seven months of employment with GM in 2017, she earned just $14,242.98. This amounts to approximately $2,000 per month, or about $21,000 in lost wages from the date of her termination through the date of filing this lawsuit. (Doc. No. 25 at 1). Given that Plaintiff alleges she was terminated on July 20, 2017, and that her annual salary – based on her 2017 W-2 – was approximately $24,000, her damages for lost wages, calculated through an anticipated trial date 18 months from the date of removal, would amount to approximately $64,000.

Plaintiff correctly notes that her damages would be offset by any income earned, see Clark v. Matthews Int'l Corp., 639 F.3d 391, 396 (8th Cir. 2011), and submits an earnings statement showing she earned approximately $5,200 as an assembly worker at Hussmann Corporation from August 16, 2018 through November 9, 2018 (Doc. No. 25-2), when she was laid off based on seniority.[2] Based on this evidence of mitigation, Plaintiff's damages appear to fall well below the jurisdictional amount.

However, Plaintiff's calculation does not include an amount of damages for punitive damages or attorneys' fees, which may be considered when assessing whether the amount in controversy has been met. See Crawford v. Hoffman–La Roche, Ltd., 267 F.3d 760, 765 (8th Cir. 2001). Defendants have cited several analogous MHRA cases in which plaintiffs have been awarded punitive damages and attorneys' fees well in excess of $75,000. (Doc. No. 1 at ¶ 9; Doc. No. 22 at 5-6). See e.g., Jarrett v. Henkel Corp., No. 4:15CV0832 DGK, 2016 WL 407301, *2 (W.D. Mo. Feb. 2, 2016) (finding Defendants met their burden of proving the requisite

---

[2] Although Plaintiff states that she expects to be called back around February 2019, she presents no specific facts or evidence in support of this expectation.

jurisdictional amount by, *inter alia*, citing several MHRA cases in which compensatory damages alone exceeded $75,000, and several other MHRA cases where the attorneys' fee award exceeded $75,000); Pleasant v. Noble Fin. Corp., 54 F. Supp.3d 1071, 1080 (W.D. Mo. 2014) (finding Defendant did not meet its burden where it presented no specific facts or evidence, such as analogous case law or hypothetical itemization of damages to show that the punitive damages and attorney fees, when added to the actual damages, would raise the sum over $75,000). Thus, after factoring punitive damages and attorneys' fees into the analysis, the Court finds Defendants have met their burden to establish the amount in controversy in this case exceeds $75,000.

**Conclusion**

Because Defendants have met their burden to establish that this Court has jurisdiction under 28 U.S.C. § 1332, Plaintiff's motion to remand will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [15] is **DENIED.**

A scheduling conference will be set by separate order.

Dated this 20th day of December, 2018.

							_____
							**JOHN A. ROSS**
							**UNITED STATES DISTRICT JUDGE**